IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| PRESIDENTIAL TITLE LLC, an Arkansas limited liability company, | ) ) ) ) |
| And | ) ) |
| Geoffrey Polk | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) C.A. No.: 4:25-cv-00839-KGB |
| ALAN MCCLAIN, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE ARKANSAS INSURANCE DEPT. | ) ) ) ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE U.S. DISTRICT JUDGE:

   Plaintiff, Geoffrey Polk, moves for a preliminary injunction under Rule 65(a) to halt the ongoing enforcement of unconstitutional employment requirement for non-resident Arkansas title producers. These provisions—Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR §204-104 —discriminate against nonresidents by requiring "employment", barring Plaintiff from his chosen occupation in Arkansas in violation of the Privileges and Immunities Clause and the Equal Protection Clause. Absent immediate relief, Plaintiff will continue to suffer irreparable harm to his constitutional rights and professional livelihood.

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 to halt the enforcement of Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR §204-104 (collectively, the "Statutes") which conditions issuance of a non-resident Arkansas title license on having an "employer" in the state of Arkansas while no such limitation exists for residents (the "Employer Requirement").

Plaintiff alleges that the Statutes violate the Privileges and Immunities Clause and the Equal Protection Clause of the United States Constitution. He seeks a declaration that these provisions are unconstitutional and an injunction barring their enforcement.

Plaintiff has a fundamental right to pursue the common calling of a title agent. The Employer Requirement is not closely related to any substantial governmental interest, and Defendant can produce no evidence that nonresidents are a "peculiar source of the evil" the Statutes purport to address. Nor can Defendant offer any admissible evidence capable of meeting the State's burden under the governing constitutional standards.

The Statutes also fail rational basis review under the Equal Protection Clause, as they bear no rational relationship to a legitimate governmental interest.

A preliminary injunction is appropriate where the movant demonstrates: **(1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the injunction; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.** *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Plaintiff satisfies each element, and the Court should enjoin enforcement of the challenged provisions pending final judgment.

**SUMMARY OF ARGUMENT**

The Arkansas statutes at issue impose a clear and impermissible barrier to the practice

of a common calling by conditioning a title agent License on "employment" by a resident agent. This restriction violates the Privileges and Immunities Clause because it discriminates against nonresidents with respect to a fundamental right — pursuing a lawful occupation — without any substantial justification. The Supreme Court has repeatedly struck down such restrictions when the State cannot demonstrate that nonresidents are a peculiar source of harm addressed by the law and that the restriction is closely related to that harm. *See Supreme Court of N.H. v. Piper*, 470 U.S. 274 (1985); *Supreme Court of Va. v. Friedman*, 487 U.S. 59 (1988).

Arkansas can offer no admissible evidence that nonresident title agents present any unique risk or that employment has any rational relationship to competence, oversight, or consumer protection. The Statutes likewise fail rational basis review under the Equal Protection Clause. This Court need not speculate; similar residency restrictions have already been invalidated in multiple jurisdictions in actions brought by this Plaintiff. See *Polk v. Alaska*, No. 3:24-cv-00207-HRH (D. Alaska Apr. 28, 2025); *Polk v. Stolfi*, No. 3:24-cv-01670-IM (D. Or. May 7, 2025).

Plaintiff easily satisfies each element for preliminary injunctive relief. The constitutional claims present a substantial likelihood of success on the merits; the continued denial of licensure inflicts irreparable harm by excluding Plaintiff from his profession in Arkansas; the balance of equities favors Plaintiff, as the State suffers no legitimate harm from licensing qualified nonresidents; and vindicating constitutional rights is squarely in the public interest.

This Court should therefore grant Plaintiff's motion and enjoin enforcement of the unconstitutional residency restrictions pending final judgment.

# ARGUMENT

I. **Plaintiff has standing to Challenge Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR §204-104 ("Statutes")**

Plaintiff satisfies the constitutional and prudential requirements for standing. First, Plaintiff has suffered an injury in fact.

On or about September 5, 2024, Plaintiff desired to apply for an Arkansas non-resident title agent license. ¶8, Polk Affidavit. Polk was advised his application would not be approved unless he had an "employer" within the state of Arkansas. ¶8, Polk Affidavit. Further, Plaintiff has been blocked from even taking the Arkansas title exam, despite repeated requests of the state for approval to do so. *See* ¶8-10, Polk Affidavit.

That denial has prevented Plaintiff — a licensed title professional in more than thirty states — from engaging in his chosen profession in Arkansas, a recognized economic liberty and "common calling" protected under the Privileges and Immunities Clause. This denial is concrete, particularized, and ongoing. ¶24, Polk Affidavit.

Second, the injury is fairly traceable to Defendant's enforcement of Section Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR §204-104. Further, A plaintiff need not suffer the final enforcement of a challenged law to establish standing. Where it is "inevitable" that a regulation will be applied to bar the plaintiff, courts apply the *firm prediction* rule. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 69 (1993) (O'Connor, J., concurring). If the government has taken a categorical position that excludes the plaintiff from eligibility, the injury is present and concrete, not speculative. See also *Craig v. Boren*, 429 U.S. 190, 193–97 (1976) (pre-enforcement challenge proper where statute predictably denies access); *Saenz v. Roe*, 526 U.S. 489, 502 (1999) (residency-based restrictions produce immediate constitutional injury).

Here, because Plaintiff Polk does not have an employer and because Plaintiff Presidential Title LLC has likewise been blocked from licensure, there is no conceivable scenario in which Polk's application would be granted. It can therefore be firmly predicted that any such application would be denied absent a resident employer.

Third, the injury is redressable by a favorable decision. A declaration that the employer provision is unconstitutional and an injunction barring their enforcement would remove the only stated barrier to licensure. Upon such relief, Plaintiff would be eligible to obtain a title agent License and immediately engage in escrow transactions in Arkansas.

Because Plaintiff is the direct object of the challenged licensing restrictions, there is no question that he has standing to seek both prospective injunctive relief and a declaratory judgment under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and its progeny. The challenged statutes currently and unlawfully bar Plaintiff from his profession in Arkansas, and this Court's intervention is necessary to vindicate his constitutional rights.

## II.     Plaintiffs are Substantially Likely to Prevail on the Merits
### a.   Fundamental right to be an "Title agent"

The Privileges and Immunities Clause of Article IV of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens[1] in the several States." U.S. Const. art. IV, § 2, cl. 1. "The object of the Privileges and Immunities Clause is to 'strongly ... constitute the citizens of the United States [as] one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998) (*citing Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868)).

---

[1] For purposes of a privileges and immunities evaluation, the term 'resident' and 'citizen' are deemed to be interchangeable. *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 279 n. 6 (1985).

The Clause thus "provides important protections for nonresidents who enter a State," and while "[t]hose protections are not 'absolute,' ... the Clause 'does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.'" *Saenz v. Roe*, 526 U.S. 489, 502 (1999) (internal citations omitted).

The Supreme Court enunciated a two-step test to determine whether there is a violation of the privileges and immunities protections. As stated in *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988):

> First, the activity in question must be sufficiently basic to the livelihood of the Nation ... as to fall within the purview of the Privileges and Immunities Clause.... Second, if the challenged restriction deprives nonresidents of a protected privilege, [the court] will invalidate it only if [it] conclude[s] that the restriction is not closely related to the advancement of a substantial state interest.

The first step in this inquiry is to determine whether the activity in question is a right worthy of the protection of the privileges and immunities clause.

In this matter, the activity is Geoffrey Polk's licensure as a "Title agent." Geoffrey Polk holds non-resident Title Producer licenses in Indiana, Wisconsin, North Dakota, West Virginia, Georgia, Maryland, Montana, Pennsylvania, Michigan, Virginia, Tennessee, New Jersey, South Carolina, Colorado, Ohio, North Carolina, Minnesota, Nevada, New Hampshire, Rhode Island, Maine and Vermont as well as Title Examination and Escrow licenses in Utah. ¶15, Polk Affidavit. Polk holds a non-resident Qualified Title Principal Agent license in Missouri." ¶15, Polk Affidavit. Polk also holds an active resident Title Producer license in Florida, License No. G098349. ¶14, Polk Affidavit.

Further, Polk has over two thousand (2000) hours of prior title work experience, has been fingerprinted and background checked over forty (40) times, and has taken and passed title license

examinations in the states of Pennsylvania, Virginia, Florida, Missouri, Utah, and Wyoming. ¶16, 17, Polk Affidavit.[2]

For an activity to be worthy of the protection of the Privileges and Immunities clause, it must be "sufficiently basic to the livelihood of the Nation" that it constitutes a fundamental right. *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978). The ability to pursue one's profession or "common calling" is one of the limited number of foundational rights protected under the privileges and immunities clause. *Toomer v. Witsell*, 334 U.S. 385, 396 (1948); *see also United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 219 (1984) ("Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause."). Indeed, "[m]any, if not most, of [the Supreme Court's] cases expounding the Privileges and Immunities Clause have dealt with this basic and essential activity." *Camden*, 465 U.S. at 219.

The Court has further protected Plaintiffs' fundamental rights, to "ply their trade, practice their occupation, [and] pursue a common calling." *Hicklin v. Orbeck*, 437 U.S. 518, 524 (1978). As well, "protectionist" aims meant to protect one's own citizenry will not be met with favor by the Court. *See Brusznicki v. Prince George's Cnty.*, 42 F.4th 413, 417 (4th Cir. 2022) (holding that a Md. limited tax sale auction was constitutionally offensive because it "tramples on fundamental rights to… pursue a chosen profession without advancing any substantial state interests").

Here, Geoffrey Polk is attempting to "ply" his trade as an "Title agent." He maintains licensure in numerous states with respect to the same. Further, the Plaintiff has pled sufficient facts to show that he is pursuing his "livelihood" by seeking the same licensure in Arkansas. As such, being a title agent is thereby a "fundamental right" to "practice" his occupation.

---

[2] As noted in Polk's affidavit (¶¶9-12), he is being precluded from taking the Arkansas title exam. At a minimum, this Court should grant Plaintiff limited relief to take the exam, thereby removing at least one impediment to licensure with respect to this matter.

> b. **No "peculiar evil" on the part of non-residents**

The second step in the privileges and immunities analysis is to determine whether the restriction is "closely related to the advancement of a substantial state interest."

The Privileges and Immunities Clause "does not preclude disparity in treatment where substantial reasons exist for the discrimination and the degree of discrimination bears a close relation to such reasons. *Friedman*, 487 U.S. at 67. This inquiry, however, must not overlook the purpose of the Privileges and Immunities Clause, which "is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer v. Witsell*, 334 U.S. 385, 398 (1948).

Following *Toomer*, the Court in *Hicklin v. Orbeck* invalidated a statute where the State presented no evidence that nonresidents were a source of the evil that the statute was enacted to remedy. 437 U.S. 518, 526 (1978) (citation omitted). In 1972, "professedly for the purpose of reducing unemployment in the State, the Alaska Legislature passed an Act entitled 'Local Hire Under State Leases.,'" which required that "all oil and gas leases, easements or right-of-way permits for oil or gas pipeline purposes, unitization agreements, or any renegotiation of any of the preceding to which the state is a party" contain a provision "requiring the employment of qualified Alaska residents" in preference to nonresidents. *Id.* at 520.

There, the Court observed that although a "statute may not violate the Clause if the state shows 'something to indicate that noncitizens constitute a particular source of evil at which the statute is aimed and, beyond this, the State has no burden to prove that its laws are not violative of the … Clause, certainly no showing was made on this record that nonresidents were "a peculiar source of the evil" [the statute] was enacted to remedy, namely, Alaska's uniquely high unemployment." *Id.* at 526 (internal citations omitted).

These cases demonstrate that the mere fact that a statute achieves its purported objectives does not end the inquiry. If that statute discriminates against nonresidents and there is no evidence that nonresidents are a source of evil that the statute aims to address, the state actor will not be able to carry its burden of proving that the restrictions placed upon nonresidents are closely related to a substantial state interest.

In *Friedman v. Supreme Court of Virginia*, the plaintiff brought an action to invalidate a Rule that required experienced lawyers who resided out of state to pass the Virginia bar and show that they intended to open an office in Virginia to be licensed in Virginia, whereas residents of the state could get licensed solely on motion. 822 F.2d 423, 424 (4th Cir. 1987), *aff'd*, 487 U.S. 59 (1988). The State argued that the Rule served a legitimate state interest by ensuring that attorneys admitted to the bar are familiar with the laws of Virginia. *Id.* at 425.

First, the Court rejected Virginia's argument that the Rule furthered the state goal of enhancing the quality of lawyers in the state. It was unable to find any nexus between residence and lawyer competence, nor was Virginia able to articulate such a nexus. *Id.* It follows that there must be a logical nexus between the burden placed on nonresidents and the end goal which the proposed statute wishes to achieve.

Second, the Court found that the Residency Requirement did not necessarily facilitate compliance with the requirement that an attorney must intend to practice full time in Virginia, as required by Rule 1A:1(d) because a resident of Virginia is more likely to comply with this commitment than a nonresident. *Id.* at 429. The Court also found this logic "tenuous" as there was no evidence offered by the State to support the argument that a non-resident will be less truthful than a resident when stating his intention to practice full-time in Virginia.

It is unclear exactly what interests, if any, the employer requirement advances other than mere protectionism like that found offensive in the foregoing cases.

Further, as noted in the case law, the burden remains on the state to designate exactly how the offensive provision advances any substantial state interests as well as how the same are "closely related." The Defendant cannot meet that burden.

Accordingly, it is clear that the Plaintiff is substantially likely to prevail on the merits.

   c. **The Statutes lack any "rational basis" and fail equal protection analysis**

Plaintiff also seeks a Declaratory Judgment that Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR §204-104 are unconstitutional and in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230 (1981). When social or economic legislation is to be reviewed, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process and not by the courts. *U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174 (1980).

When analyzing a State statute under the rational basis test, the courts will not set aside a discriminating classification if any set of facts may be reasonably conceived to justify the classification. The court will not even go so far as to examine if the classification devised by the legislative body achieves its desired goal but will only examine if the State Legislature could have

believed that the provision would further a legitimate purpose. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456 (1981)(emphasis added). "Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Vance v. Bradley,* 440 U.S. 93, 111 (1976).

The Statutes require that a non-resident must have a resident employer, while no such restriction exists for residents. This facially discriminatory condition cannot be justified under any legitimate governmental purpose. The State cannot plausibly claim that non-residents are less competent, less ethical, or otherwise incapable of independent practice when those very same qualities are presumed adequate in residents.

To impose an employer requirement solely on out-of-state applicants is mere economic protectionism designed to advantage in-state residents at the expense of equally qualified non-residents. The Supreme Court has consistently held that protectionism, standing alone, is not a legitimate state interest. See *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 878 (1985) ('A State may not constitutionally favor its own residents by burdening out-of-state competitors.'). There is no conceivable or rational basis for treating similarly situated title agents differently on the basis of residency; the statute is unconstitutional on its face and as applied.

### III.     Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief

The loss of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff is presently and continuously excluded from engaging in his chosen profession in Arkansas solely because of the unconstitutional employer restriction in Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR §204-104. Each day that passes without relief is another day Plaintiff is denied the

opportunity to serve clients, generate income, and expand his multistate title practice in Arkansas— opportunities that cannot be retroactively restored or compensated fully by money damages.

The Eighth Circuit has consistently recognized that the loss of constitutional freedoms, even for minimal periods of time, constitutes irreparable injury. *See Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), vacated on other grounds, 562 U.S. 1003 (2010); *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This principle applies with full force where, as here, the challenged law bars the Plaintiff from pursuing his lawful occupation—a "fundamental right" under the Privileges and Immunities Clause. *See Supreme Court of N.H. v. Piper*, 470 U.S. 274, 280–82 (1985).

Plaintiff has invested substantial time, resources, and goodwill in building a nationwide title operation licensed in more than thirty-five states. Arkansas' enforcement of its employer restriction not only inflicts ongoing economic harm but also disrupts established business relationships, prevents the onboarding of ready clients, and diminishes Plaintiff's competitive position in the Arkansas marketplace. These harms are neither speculative nor remote; they are concrete, immediate, and continuing.

Because the injury stems from the ongoing enforcement of unconstitutional statutes, monetary damages alone cannot make Plaintiff whole. The only adequate remedy is prospective injunctive relief preventing further enforcement during the pendency of this litigation.

## IV. The Balance of Equities and Public Interest Weigh in Favor of Granting Injunctive Relief

When the government is a party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both weigh heavily in favor of granting

relief here.

The Eighth Circuit has emphasized that courts must give significant weight to the protection of constitutional rights when assessing the public interest. *See Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (recognizing that injunctions vindicating constitutional rights serve a strong public interest). Likewise, the Supreme Court has long held that the loss of constitutional freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976), quoted in *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). The Privileges and Immunities Clause and Equal Protection Clause safeguard the ability of qualified individuals to pursue their chosen occupation free from arbitrary state barriers. Enjoining enforcement of an unconstitutional statute thus serves the highest public interest: ensuring that state laws conform to the U.S. Constitution.

On Defendant's side of the scale, there is no legitimate harm from licensing a fully qualified, experienced title agent who meets all professional requirements apart from employment. Arkansas will continue to regulate title agents through its existing statutory framework, including examination, bonding, and oversight requirements. Removing the employer restriction does not compromise consumer protection or the integrity of the title industry — and Arkansas can offer no evidence to the contrary.

The equities thus weigh decisively in favor of relief. Preventing the ongoing enforcement of an unconstitutional barrier causes no lawful harm to the State, but continuing enforcement irreparably injures Plaintiff and undermines public confidence in the rule of law. Granting the injunction will preserve the status quo in a way that both protects Plaintiff's constitutional rights and serves the broader public interest in free and open interstate

commerce in lawful occupations.

V.    **No Bond Should be Required**

[T]he district court is vested with wide discretion in setting the amount of the bond, and the court may even require no bond." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quoting *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976)).  Because this case concerns constitutional freedoms and Defendant will not suffer any monetary harm from the Court's preliminary injunction, Plaintiff respectfully requests that the Court require no bond.

## CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) declare that Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR §204-104 violate the Privileges and Immunities Clause and the Equal Protection Clause of the United States Constitution; (2) enter a preliminary and permanent injunction prohibiting Defendant from enforcing these provisions; and (3) grant such further and additional relief as the Court deems just and proper.

    /S/Geoffrey Polk
Geoffrey Polk, Esq.
7627 Lake St. Ste 206 A34
River Forest, IL  60305
Ph: 312-929-3861
Email : Geoff@geoffreypolk.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August, 2025, a copy of the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

I also hereby certify that service was also made on the following via electronic service and via United States mail, postage prepaid:

    Alan McClain, CO Sharnae Y. Diggs, Attorney
    101 West Capitol Avenue
    Little Rock, AR  72201
    Sharnae.diggs@arkansasag.gov


                                                         */s/ Geoffrey Polk*
                                                          Geoffrey Polk, Esq.