IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PRESIDENTIAL TITLE, LLC, an Arkansas
limited liability company *et al.*                                                  PLAINTIFFS

v.                                          Case No. 4:25-cv-00839 KGB

JIMMY HARRIS, in his official capacity
as Commissioner of the Arkansas Insurance
Department                                                                          DEFENDANT

<u>PRELIMINARY INJUNCTION</u>

Before the Court is plaintiff Geoffrey Polk's motion for a preliminary injunction and the

joint motion for order granting stipulated judgment and order (Dkt. Nos. 5; 22). For the following

reasons, the Court grants, in part, Polk's motion for a preliminary injunction (Dkt. No. 5). The

Court denies, as moot, the joint motion for order granting stipulated judgment and review (Dkt.

No. 22).

I.      **Procedural Background**

Polk filed this action naming as defendant in his official capacity the Commissioner of the

Arkansas Insurance Department ("Commissioner")[1] (Dkt. No. 1). In count one, Polk seeks a

declaratory judgment "declaring Arkansas Statutes['] requirement that a title agent have a

'physical office' in Arkansas unconstitutional and in violation of the Privileges and Immunities

Clause of the United States Constitution, Interstate Commerce Clause of the U.S. Constitution,

Article I, Section 8, and the Equal Protection Clause of the United States Constitution," as applied

to the state by the Fourteenth Amendment (*Id.*, ¶ 64). In count two, Polk seeks injunctive relief

---

[1] When Polk filed his action, he named as defendant Alan McClain, in his official capacity
as the Commissioner of the Arkansas Insurance Department (Dkt. No. 1). On or about November
5, 2025, Jimmy Harris replaced McClain as Commissioner and was substituted in his official
capacity as the Commissioner of the Arkansas Insurance Department as the named defendant in
this case (Dkt. No. 28). *See* Fed. R. Civ. P. 25(d).

"ordering Defendant to cease enforcing the Arkansas Statutes['] requirement that an individual applicant have a 'physical office' or 'employer' to obtain licensure in Arkansas in violation of the United States Constitution." (*Id.*, ¶ 68).  In count three, Polk alleges a violation of 42 U.S.C. § 1983 (*Id.*, ¶¶ 72-73).  In count four, Polk alleges a violation of the Sherman Antitrust Act, 15 U.S.C. § 1 (*Id.*, ¶¶ 74-79).  In count five, Polk alleges a violation of the Arkansas Antitrust Act, Arkansas Code Annotated § 4-75-309 (*Id.*, ¶¶ 80-83).

Polk filed a motion for a preliminary injunction, seeking "to halt the ongoing enforcement of unconstitutional employment requirement for non-resident Arkansas title producers." (Dkt. No. 9, at 1; *see also* Dkt. No. 5).  Polk cites Arkansas Code Annotated § 23-103-402(11)(A) and 23 CAR § 204-104 as the provisions he contends "discriminate against nonresidents by requiring 'employment,' barring Plaintiff from his chosen occupation in Arkansas in violation of the Privileges and Immunities Clause and the Equal Protection Clause." (Dkt. No. 9, at 1).  The Commissioner responded in opposition to the motion for a preliminary injunction (Dkt. No. 12). Polk replied (Dkt. No. 13).

The Court scheduled a hearing on the preliminary injunction motion for October 31, 2025. The parties filed a stipulation in advance of the hearing (Dkt. No. 20).  On October 30, 2025, the Commissioner filed a joint motion for order granting stipulated judgment and order (Dkt. No. 22). The Court conducted a hearing on the record Friday, October 31, 2025, and informed counsel for the parties that the Court would take the matter under advisement and review relevant legal authorities related to the parties' pending motions (Dkt. No. 23).  On November 7, 2025, the Commissioner filed a notice purporting to withdraw his consent to the joint motion for order granting stipulated judgment and order (Dkt. No. 26, ¶ 2).  The Court scheduled a second hearing

2

on the pending motions (Dkt. No. 29). The Court conducted a hearing on the record Tuesday, November 19, 2025.

## II.    Joint Motion For Order Granting Stipulated Judgment And Order

At the Court's November 18, 2025, hearing, the parties agreed that the Commissioner revoked consent to the joint motion for order granting stipulated judgment and order (Dkt. No. 33; *see* Dkt. Nos. 22; 26). The parties also raised no objection to the Court denying, as moot, the motion (Dkt. No. 22; *see* Dkt. No. 33). For good cause shown, the Court denies, as moot, the joint motion for order granting stipulated judgment and order (Dkt. No. 22).

## III.    Factual And Legal Background

Polk seeks injunctive relief to halt the enforcement of Arkansas Code Annotated § 23-103-402(11)(A) (the "Statute") and 23 CAR § 204-104 (the "Rule") as unconstitutional. Polk specifically seeks relief because he maintains the challenged Statue and Rule condition "the issuance of a non-resident Arkansas title license on having an 'employer' in the state of Arkansas while no such limitation exists for residents. . . ." (Dkt. No. 9, at 2). He refers to this as the "Employer Requirement." (*Id.*). The Commissioner argues that the Statute and Rule are constitutional.

Arkansas Code Annotated § 23-103-402(11)(A) provides, in pertinent part:

(11)
　　(A) "Title insurance agent" means an individual affiliated with a title insurance agency who is authorized on behalf of a title insurer to issue a title insurance report or title insurance policy and is:
　　　　(i) A resident of the State of Arkansas licensed under § 23-64-101 et seq.; or
　　　　(ii) A nonresident individual licensed under § 23-64-101 et seq. and <u>employed by a resident licensee</u>.

Ark. Code Ann. § 23-103-402(11)(A) (emphasis added).

The Rule provides, in pertinent part:

. . .

(2)(A)  The applicant must be a resident of the State of Arkansas or a nonresident employed by a resident licensee.

(B)  A "resident title insurance agent" means an agent whose residence is in or who may vote in this state or who is licensed as a resident insurance producer by the Insurance Commissioner in accordance with the Producer Licensing Model Act, Arkansas Code § 23-64-501 et seq.

(C)  Residency by a title insurance agency must be demonstrated by a place of business accessible to the public wherein the licensee principally conducts transactions.

(D)  A nonresident individual may be eligible for licensure if he or she is employed by a resident title insurance agency and meets the other eligibility requirements of this section.
. . . .

23 CAR § 204-104(2)(A) – (D).

Polk submitted an affidavit in support of his motion for preliminary injunction (Dkt. No. 5-2), and he submitted a supplemental affidavit in support of his motion (Dkt. No. 7).  In advance of the hearing on the motion for preliminary injunction, the parties stipulated to the following:

- Polk is a resident of Florida currently domiciled in Illinois (Dkt. No. 20, ¶ 3).
- Polk intended to apply for a license for Presidential, a single member Arkansas limited liability company of which he is the sole member (*Id.*, ¶ 4).
- Polk was advised by Defendant's agent, Brandon Looney, that Presidential could not be licensed because it lacked a Designated Responsible Licensed Producer ("DRLP") (*Id.*, ¶ 5).
- Polk desires to be the DRLP for Presidential (*Id.*, ¶ 6).
- On or about July 7, 2025, Polk attempted to sign up for the Arkansas title examination. He was blocked from the examination as he did not have an Arkansas Real Estate Candidate ID (*Id.*, ¶ 7).
- Polk immediately reached out to Defendant's agents requesting authority to take the Arkansas title exam (*Id.*, ¶ 8).
- Polk's request to sit for the Arkansas title exam was denied (*Id.*, ¶ 9).
- Polk has not received any approval to take the exam (*Id.*, ¶ 10).
- Polk holds an active resident Title Producer license in Florida (*Id.*, ¶ 11).
- Polk holds non-resident Title Producer licenses in Indiana, Wisconsin, North Dakota, West Virginia, Georgia, Maryland, Montana, Pennsylvania, Michigan, Virginia, Tennessee, New Jersey, South Carolina, Colorado, Ohio, North Carolina, Minnesota, Nevada, New Hampshire, Rhode Island, Maine and Vermont as well as Title

Examination and Escrow licenses in Utah. Polk holds a non-resident Qualified Title Principal Agent license in Missouri (*Id.*, ¶ 12).

- Polk, in the past two years, has taken and passed title examinations in the states of Pennsylvania, Virginia, Florida, Missouri, Utah, and Wyoming (*Id.*, ¶ 13).

Polk avers that the denial of his Arkansas non-resident title agent license prevents him from directly serving clients in Arkansas and from completing transactions that involve Arkansas property, which has caused him to lose business opportunities and associated revenue (Dkt. No. 5-2, ¶ 19). Further, Polk states that "[s]everal existing clients have expressed an immediate need for [his] services in Arkansas, but [he has] been unable to fulfill their requests due solely to the employer restrictions" included in the Statute and Rule (*Id.*, ¶ 20). He states that "[t]he inability to operate in Arkansas has also hindered [his] ability to expand and maintain relationships with national and regional clients who require title and escrow services in multiple jurisdictions, including Arkansas." (*Id.*, ¶ 21). He maintains that "[t]hese lost opportunities cannot be recaptured at a later date and directly diminish [his] professional goodwill, reputation, and competitive standing in the industry." (*Id.*, ¶ 22). He asserts that "monetary damages alone cannot make [him] whole." (*Id.*, ¶ 24).

## IV.    Jurisdiction And Standing

Federal Courts are courts of limited jurisdiction. Thus, "[t]o reach the merits of a case, an Article III court must have jurisdiction." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). These jurisdictional requirements include subject matter jurisdiction and standing.

First, the Court finds that it has subject matter jurisdiction over the case. Polk's motion for preliminary injunction requests relief for alleged violations of the United States Constitution's Privileges and Immunities Clause and Equal Protection Clause. Because Polk's allegations arise under the Federal Constitution, this Court has subject matter jurisdiction. 28 U.S.C. § 1331(a).

5

Second, the Court finds Polk has standing.  Polk's brief in support of his motion for a preliminary injunction argues that Polk has standing to challenge the Statute and Rule (Dkt. No. 9, at 4).  The Commissioner makes no argument contesting standing (Dkt. No. 12).  However, the Court addresses standing, regardless of whether it is contested, because "[s]tanding is always a threshold question in determining whether a federal court may hear a case." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (internal quotations omitted).  "A party invoking federal jurisdiction has the burden of establishing standing 'for each type of relief sought.'" *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 974 (8th Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  To have standing to seek injunctive relief, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers*, 555 U.S. at 493.

The Court finds that Polk satisfies the Article III requirements for standing.  First, the parties stipulate that Polk has been blocked from taking the Arkansas title examination, despite requests to sit for the exam.  Moreover, the parties agree that Polk is engaged in the business of being a licensed title professional.  Being deprived of the opportunity to engage in what is otherwise lawful business is a sufficient injury in fact.  Second, because the Commissioner's agents have advised that Polk could not sit for the exam or proceed in the licensure process, the enforcement of the challenged Statue and Rule are actual, and it is not a mere hypothetical grievance.  Third, Polk's alleged injury is directly traceable to the Commissioner's conduct in enforcing the Statute and Rule.  The Commissioner's agent advised Polk that Polk's application would be denied, denied Polk access to sit for the exam, and blocked Polk's attempts to proceed

to become a licensed title agent in Arkansas.  Fourth, a favorable judicial decision by this Court would provide Polk necessary redress for his alleged constitutional injury by permitting him to sit for the exam and proceed in the licensing process.

## V.     Preliminary Injunction Legal Standard

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (internal quotations omitted).  To determine whether a preliminary injunction is warranted, the Court considers the *Dataphase* factors:  "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties' litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  "No single [*Dataphase*] factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).  However, the "the third factor—probability of success [on the merits]—is the most significant." *Sleep Number Corp.*, 33 F.4th at 1016 (citing *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021), and *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)).

Under controlling Eighth Circuit law:

> [o]rdinarily, the movant must show only a "fair chance" of success on the merits. *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019).  But "where a preliminary injunction is sought to enjoin. . . government action based on presumptively reasoned democratic processes," the movant must show that he "is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008) (en banc).  State and federal statutes are the output of "presumptively reasoned democratic processes." *Id.* at 732 & n.6.

*Eggers v. Evnen*, 48 F.4th 561, 565 (8th Cir. 2022).  Here, Polk challenges the Statute and Rule. As a result, the Court applies the "likely to prevail on the merits" standard.

### VI.    Preliminary Injunction Analysis

Polk argues that he is entitled to a preliminary injunction halting enforcement of the Statute and Rule for violations of the Privileges and Immunities Clause (Dkt. No. 9).  Specifically, Polk asserts that the Statute and Rule "discriminate against nonresidents by requiring 'employment,' barring Plaintiff from his chosen occupation in Arkansas. . . ." (Dkt. No. 9, at 1).  Polk seeks, "[a]t a minimum," to have this Court "grant Plaintiff limited relief to take the exam, thereby removing at least one impediment to licensure with respect to this matter." (Dkt. No. 9, at 7 n.2).  Polk also asserts that he is entitled to a preliminary injunction under the Equal Protection Clause (*Id.*, at 10-11).  The Commissioner opposes Polk's motion (Dkt. No. 12).  The Court finds that Polk is entitled to a preliminary injunction on Privileges and Immunities Clause grounds awarding the limited relief he seeks.

### A.    Privileges and Immunities Clause

Article IV, § 2, cl. 1, of the Constitution provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art. 1, § 2, cl. 1.  "The provision was designed 'to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'"  *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988) (quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1869)).  "[T]he purpose of [the] clause. . . is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed."  *Toomer v. Witsell,* 334 U.S. 385, 398 (1948).

The Eighth Circuit has articulated a two part inquiry for Privileges and Immunities Clause challenges: "(1) whether the state's law discriminates against out-of-state residents with regard to a privilege or immunity protected by the Clause, and (2) if so, whether sufficient justification exists for the discrimination." *Minnesota v. ex rel. Hatch v. Hoeven*, 456 F.3d 826, 834 (8th Cir. 2006).

### 1.      Success On The Merits

#### a.      Privilege Or Immunity Protected By The Clause

Polk argues that he has a right protected by the Privileges and Immunities Clause to engage in his trade as a title agent (Dkt. No. 9, at 2). The Commissioner argues that Polk has no such right because there is no Supreme Court or Eighth Circuit case law directly ruling that there is a right to obtain licensure as a title agent. The Court finds that Polk is likely to prevail in establishing that licensure is a privilege or immunity implicated by the Clause.

While the Privileges and Immunities Clause is not often interpreted, "[w]hen the Privileges and Immunities Clause has been applied to specific cases, it has been interpreted to prevent a State from imposing unreasonable burdens on citizens of other States in their pursuit of common callings within the State[.]" *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 383 (1978). Indeed, it is well recognized that "'one of the privileges which the Clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State.'" *McBurney v. Young*, 569 U.S. 221, 227 (2013) (quoting *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280 (1985)).

The Statute and Rule directly regulate the process under which an individual may become a licensed title agent. *See* Ark. Code Ann. § 23-103-402(11)(A) and 23 CAR § 204-104. The Court is satisfied that Polk is likely to prevail in establishing that the capacity of an individual to engage in the business of a licensed title insurance agent is encompassed by the Privileges and

Immunities Clause. *See Piper*, 470 U.S. at 282 (explaining that a residency bar on licensure for lawyers implicated a right under the Privileges and Immunities Clause); *see also Baldwin*, 436 U.S. at 386 (finding a "right to pursue a livelihood in a State other than his own" under the Privileges and Immunities Clause). Like how "the Clause is implicated whenever, . . . a State does not permit qualified nonresidents to practice law within its borders on terms of substantial equality with its own residents," the Clause is also likely to be implicated when a state does not permit qualified nonresidents to obtain title agent licensure within its borders on terms of substantial equality with its own residents. *Friedman*, 487 U.S. at 66.

The Court rejects the Commissioner's argument that, because there is no binding Supreme Court or Eighth Circuit precedent addressing whether obtaining licensure as a title agent is a right implicating the Privileges and Immunities Clause, it cannot be (Dkt. No. 12, at 3).[2] To be invoked, the Clause does not require the hyper-specific precedent the Commissioner suggests it does. Supreme Court and Eighth Circuit precedent firmly establishes a right for non-citizens of a state to pursue a common calling and seek out occupations—including those with complex licensure regimes like the practice of law—on the same terms as citizens of a given state. The Court also finds distinguishable *Sarasota Wine Market, LLC v. Schmitt*, 987 F.3d 1171 (8th Cir. 2021), involving alcohol regulation and *McBurney v. Young*, 569 U.S. 221, 227 (2013), involving out-of-state access to Virginia's Freedom of Information Act.[3]

---

[2] The First and Ninth Circuit Courts of Appeal have both held that insurance licensure requirements that imposed greater burdens on out of state applications implicated rights under the Privileges and Immunities Clause. *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 934 (9th Cir. 2008); *Silver v. Garcia*, 760 F.2d 33, 36 (1st Cir. 1985). Further, at least one other district court in the Eighth Circuit has examined a similar issue and reached the same conclusion. *Council of Ins. Agents and Brokers v. Viken*, 408 F. Supp.2d 836 (D.S.D. 2005).

[3] The Commissioner referenced the McCarran-Feguson Act, 15 U.S.C. §§ 1011-1015, in the Equal Protection section of his response and at the November 18, 2025, hearing regarding whether title agent insurance licensure is a privilege or immunity protected by the clause (Dkt.

For these reasons, the Court determines that Polk is likely to prevail on his argument that the opportunity to become a licensed title insurance agent in Arkansas is a right protected by the Privileges and Immunities Clause.

### b.    Sufficient Justification For The Discrimination

Having found that Polk is likely to prevail in establishing that the challenged Statute and Rule implicate a right protected by the Privileges and Immunities Clause, the Court turns to whether the challenged Statue and Rule have sufficient justification. Polk specifically seeks relief because he maintains the challenged Statue and Rule condition "the issuance of a non-resident Arkansas title license on having an 'employer' in the state of Arkansas while no such limitation exists for residents. . . ." (Dkt. Nos. 5-1, at 2; 9, at 2). He refers to this as the "Employer Requirement." (*Id.*).

The Supreme Court has determined that, "[w]hen a challenged restriction deprives nonresidents of a privilege or immunity protected by this Clause, it is invalid unless '(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.'" *Barnard v. Thorstenn*, 489 U.S. 546, 552 (1989) (quoting *Piper*, 470 U.S. at 284). In other words, "if the challenged restriction deprives nonresidents of a protected privilege," it is invalid if it "is not closely related

---

Nos. 12, at 8; 33). The McCarran-Ferguson Act does not impact the Court's Privileges and Immunities Clause analysis. The First Circuit in *Silver* explained that the McCarran-Ferguson Act "is a prime example of congressional legislation which authorizes state action which might otherwise have been considered to interfere with interstate commerce." 760 F.2d at 37. However, McCarran-Feguson does not "authorize state action which might violate the Constitution in other ways." *Id*., at 38 (finding Puerto Rico residency requirement statute unconstitutional on Privileges and Immunities Clause grounds notwithstanding McCarran-Feguson's impact on the Commerce Clause). McCarran-Feguson does alter the scope of what activities are protected by the Privileges and Immunities Clause nor the extent of the protection those activities receive.

to the advancement of a substantial state interest." *Friedman*, 487 U.S. at 65 (citing *Piper*, 470 U.S. at 284). The Supreme Court has spoken about this relationship in terms of less restrictive alternatives. *Piper*, 470 U.S. at 284–85 n. 17–19. Moreover, that a restriction "does not result in the[] total exclusion from the State" does not remove the restriction from Privileges and Immunities Clause scrutiny. *Friedman*, 487 U.S. at 55.

Polk is likely to prevail in establishing that the Statute and Rule treat out-of-state residents seeking licensure as a registered title agent in Arkansas differently than in-state residents. To become a licensed title insurance agent, an Arkansas resident must meet eligibility requirements to ensure the applicant is qualified. 23 CAR § 204-104(a). On the other hand, an out-of-state resident must meet those same requirements and must be "employed" by a "resident title insurance agent." *Id.* § 204-104(a)(2)(D). An out-of-state resident must meet the Employer Requirement. The Commissioner does not meaningfully contest that the only difference between the process for becoming a resident licensed title insurance agent and a nonresident licensed title insurance agent is the Employer Requirement (Dkt. No. 12, at 4-5).

The Court finds that, even if the Commissioner prevails on his argument that there is a substantial reason for the difference in treatment created by the challenged restrictions, Polk is likely to prevail on his argument that there is an insufficiently close relationship between the discrimination caused by the Employer Requirement and the Commissioner's purported reason. In other words, Polk is likely to prevail on demonstrating that the discrimination is not sufficiently tailored to the government's proffered rationale.

The Commissioner contends that Arkansas has a substantial interest in safeguarding Arkansas residents (Dkt. No. 12, at 5; *see* Dkt. No. 33). The Commissioner argued in his brief that Arkansas "has a substantial and vested interest in ensuring nonresidents work with local title

agents that have intimate knowledge of Arkansas specific title rules." (Dkt. No. 12, at 5).  The Commissioner further argues that the "employer requirement safeguards Arkansas residents." (Dkt. No. 12, at 5).  At the Court's November 18, 2025, hearing, the Commissioner clarified that Arkansas has a substantial interest in protecting Arkansas property owners and, more specifically, protecting the rights of Arkansas property owners by ensuring that licensed title agents have intimate knowledge of Arkansas's specific title rules and processes, not that the State's interest was having nonresidents work with local agents (Dkt. No. 33).[4]

Even if the Commissioner can establish that Arkansas has a substantial interest in ensuring that Arkansas property owners—and nonresident owners of property in Arkansas—work with licensed title agents who are intimately knowledgeable about the specific title rules and processes in Arkansas, the Court finds that Polk is likely to prevail on his argument that the relationship between the restrictions on nonresidents and the State's proffered objective is tenuous, at best, and that Polk is likely to prevail on his argument that the restrictions fail to meet the "closely related to the advancement of a substantial state interest" standard.

According to the Commissioner, the Employer Requirement serves the end of ensuring licensed title agents have intimate knowledge of Arkansas's specific title rules and processes because a nonresident title agent could otherwise mistakenly intertwine the title laws of other states in which they are licensed (Dkt. No. 12, at 5).  Indeed, the Commissioner argues that, because Polk is licensed in more than 20 states, there is a "real possibility" that Polk would intertwine the laws

---

[4]  The Court accepts the clarified version of Arkansas's interest asserted by the Commissioner at this stage of the proceeding.  In his response in opposition to the motion for preliminary injunction, the Commissioner states that "Arkansas has a substantial and vested interest in ensuring nonresidents work with local title agents that have intimate knowledge of Arkansas specific title rules.  This employer requirement safeguards Arkansas residents."  (Dkt. No. 12, at 5).  If Arkansas's stated interest was ensuring only that nonresidents be employed by local agents, the Court would seriously question the substantiality of the State's purported interest.

of other states (*Id.*).  Yet, the Commissioner offers no explanation for how residency alone ensures adequate understanding of a given jurisdiction's title insurance system.  The Commissioner's argument all but assumes that residency alone ensures qualification; this cannot be the case.

Further, the Commissioner acknowledged at the November 18, 2025, hearing that part of the licensing process in Arkansas for residents and nonresidents requires applicants to test—sit for and successfully complete a written examination—to become licensed title agents.  The Commissioner fails to address this point in his brief, although the Commissioner states the purpose of the categorial prohibition on nonresidents is concern for competence (*see* Dkt. No. 12).  It is this test that Polk has been denied access to sit for as a nonresident applicant who does not satisfy the Employer Requirement.

At the hearing, the Commissioner also suggested that the Statute, passed in 2007, was in some way related to business being conducted electronically and was related to the state's "tech readiness" (Dkt. No. 33).  The Commissioner further suggested that the Statute was intended to address Polk's intent as a nonresident to perform title insurance business remotely using technology.  However, the Commissioner conceded that nothing prevents a resident of Arkansas from performing title insurance business within the State of Arkansas electronically or that prevents a resident of Arkansas from performing title insurance business remotely using technology (*Id.*).  There is no in-person requirement for any of these activities (*Id.*).

Instead, the Court finds that Polk is likely to prevail on his argument that the challenged Statute and Rule setting forth the qualifications for licensure, to the extent they impose the Employer Requirement, are not narrowly tailored to support the State's purported rationale for the discrimination.  Under 23 CAR § 204-104, all applicants for licensure must, among other requirements:  (1)  be deemed by the Commissioner to be competent, trustworthy, financially

14

responsible, and of good personal and business reputation, (2) have 2,000 hours of prior title work experience, (3) pass a written examination demonstrating competence to act as a title insurance agent, and (4) pass a criminal background check. Polk is likely to prevail on his argument that whether or not a nonresident licensee is employed by a resident licensee has no bearing on whether that nonresident individual can competently serve as a licensed title agent in Arkansas and that what seems to bear on the competence of an applicant to be a licensed title agent in Arkansas are the generally applicable eligibility requirements of 23 CAR § 204-104. Polk, and any other nonresident seeking licensure, must pass the written examination that ensures competence. With those prerequisites in mind, the Commissioner's explanation falls short. The Court finds that Polk is likely to prevail in showing that there is not a sufficient connection between the discrimination and that interest.

The Commissioner does not offer additional reasons—aside from the tenuous argument about intertwining the title laws of other states and the purported concern for remote work—for why there is a substantial reason for the disparate treatment of out-of-state residents. Polk asserts that the difference in treatment created by the challenged restrictions arises out of protectionism. On its face, the effect of the restrictions is to impose additional burdens on out-of-state residents seeking to engage in the title insurance business. *See* Ark. Code Ann. § 23-103-402(11)(A); 23 CAR § 204-104. Only if an individual becomes a resident of Arkansas or is employed by a resident licensee may that individual engage in the national business of title insurance. 23 CAR § 204-104(a)(2)(A). Polk is likely to prevail on his argument.

Finally, the Court determines that Polk is likely to prevail and defeat the Commissioner's final argument on the relationship between the interest and the challenged Statute and Rule. The Commissioner argues that, because Polk could obtain an Arkansas license if he were employed by

a resident Arkansas title professional, the restriction should survive review. The Commissioner characterizes the differential treatment as merely incidental because employment with an Arkansas title professional is "rather simple, but for the dogged refusal of Mr. Polk." (Dkt. No. 12, at 5). This argument misses the point. Polk is not required to surrender his constitutional rights to become a licensed title agent in Arkansas. That a nonresident can become a licensed title agent in Arkansas under the statutory scheme does not save the challenged Statute and Rule. As the Supreme Court explained, that a restriction "does not result in the[] total exclusion from the State" does not make the restriction valid. *Friedman*, 487 U.S. at 55. In *Friedman*, even though out-of-state residents could obtain admission to the Viriginia Bar, the additional restrictions on those out-of-state residents violated the Privileges and Immunities Clause. *Id.* Polk is likely to prevail on his argument that the same is true here. Polk argues that, even though he *could* seek employment with an Arkansas title professional, his constitutional protections do not require him to do so. Polk is likely to prevail on his argument that the extra burden, that appears to bear no substantial relationship to the State's proffered interest, is not incidental and therefore is not likely to survive review.

### 2.    Other *Dataphase* Factors

In addition to showing that he is likely to succeed on the merits, Polk must satisfy the additional *Dataphase* factors. Polk addresses these factors (Dkt. Nos. 5-1, at 11–13; 9, at 11–13). The Commissioner does not meaningfully engage with the three remaining *Dataphase* factors in the briefing, but the Commissioner did raise these factors at the November 18, 2025, hearing (Dkt. No. 33).

One factor is the threat of irreparable harm to the movant. *Dataphase*, 640 F.2d at 113. "An irreparable harm occurs when 'a party has no adequate remedy at law.'" *Iowa Migrant*

*Movement for Justice v. Bird*, 157F.4th 904, 927–28 (8th Cir. 2025) (quoting *Sleep No. Corp.*, 33 F.4th at 1018)).  "A party is not required to prove with certainty the threat of irreparable harm, but it must prove that irreparable harm is likely in the absence of an injunction."  *Iowa Migrant Movement for Justice*, 157 F.4th at 928 (internal quotations omitted).  Enforcement of the challenged restrictions against Polk constitutes irreparable harm.  The Commissioner has continued to deny Polk the opportunity to proceed in the application process to become a licensed nonresident title agent in Arkansas and has prevented him from taking the required examination.  Enforcement of the challenged Statute and Rule makes it that Polk cannot pursue the occupation in which he seeks to engage, and the Commissioner continues to assert that he will not allow Polk to proceed (Dkt. No. 20, ¶¶ 7–10).  Polk has no adequate remedy at law; only equitable relief may redress Polk's alleged wrong.

The Court also rejects the Commissioner's suggestion, made for the first time at the November 18, 2025, hearing, that Polk has not made a sufficient showing of irreparable harm because:  (1) Polk has a well-established business that operates in other states and (2) is permitted to engage in some business activity in Arkansas without a license (Dkt. No. 33).  First, the Commissioner did not make any meaningful argument regarding irreparable harm in the briefing (Dkt. No. 12).  Second, Polk is not required to show that he cannot pay his bills or that he could engage in certain title and insurance activities in Arkansas that do not require licensure (Dkt. No. 33).  Although the Commissioner argues that Polk "is not being prevented from earning income, serving clients, or any other of the rights that he alleges are fundamental," that is exactly what is occurring (Dkt. No. 12, at 5).  Polk's burden is to show that he faces irreparable harm as a result of the Commissioner's enforcement of the challenged Statute and Rule.  Polk has done that by showing the Court that Polk has been denied access to apply for licensure, denied the right to sit

for the examination, and denied the opportunity to ply his trade for clients who seek him to do so

in Arkansas and for business opportunities he would otherwise have in Arkansas (*see* Dkt. No. 5-

2, ¶¶ 19-24). Polk states that "[t]he inability to operate in Arkansas has also hindered [his] ability

to expand and maintain relationships with national and regional clients who require title and

escrow services in multiple jurisdictions, including Arkansas." (*Id.*, ¶ 21). He maintains that

"[t]hese lost opportunities cannot be recaptured at a later date and directly diminish [his]

professional goodwill, reputation, and competitive standing in the industry." (*Id.*, ¶ 22). He asserts

that "monetary damages alone cannot make [him] whole." (*Id.*, ¶ 24). Further, at the hearing, he

testified that the work he seeks to do for clients requires him to have an Arkansas title insurance

license to practice his profession fully (Dkt. No. 33).[5] At this stage, given the proof before it, the

Court accepts Polk's proof. Polk also satisfies the remaining two *Dataphase* factors: the balance

between the harm and the injury that granting the injunction will inflict on the other party and the

public interest. 640 F.2d at 113. In this context, that inquiry merges into one. *Eggers v. Evnen*,

48 F.4th 561, 564–65 (8th Cir. 2022) ("The balance-of-harms and public-interest factors 'merge

when the Government'—or, in this case, a state official in his official capacity—'is

the [nonmoving] party.'").

The Commissioner has not identified any harm in allowing Polk to sit for the examination

(*see* Dkt. No. 12). The Commissioner also has not provided any explanation for why a preliminary

---

[5] At the hearing, the Commissioner asserted for the first time that, because there is a requirement that a resident be affiliated with a resident agency pursuant to Arkansas Code Annotated § 23-103-403(B), even if Polk is allowed to sit for the examination and passes it, Polk will not be permitted to issue a title policy in Arkansas without being affiliated with a title agency (Dkt. No. 33). However, the Commissioner conceded that the affiliate requirement is different than the Employer Requirement and that the affiliate requirement applies to residents and nonresidents alike (*Id.*). Currently, Polk does not challenge the affiliate requirement as a violation of the Privileges and Immunities Clause nor does it appear to the Court that he could, given that the affiliate requirement applies to residents and nonresidents alike.

injunction is against the public interest (*Id.*).  On the other hand, Polk argues that it is in the benefit of the public interest to prevent enforcement of an unconstitutional Statute and Rule.  After careful consideration, the Court finds that the remaining *Dataphase* factors weigh in favor of issuing a preliminary injunction.  The Commissioner will experience no harm by halting enforcement of an unconstitutional scheme.  Moreover, it is in the public interest to ensure the vindication of constitutional rights.

### B.     Equal Protection Clause

Polk also argues that he is entitled to declaratory judgment that the Statute and Rule are unconstitutional and violate the Fourteenth Amendment's Equal Protection Clause (Dkt. Nos. 5-1, at 10; 9, at 10).  The Commissioner opposes Polk's motion (Dkt. No. 12).  At the preliminary injunction phase, the Court declines to address the Equal Protection Clause arguments, given the Court's determination regarding the Privileges and Immunities Clause.

### VII.     Bond

"[T]he district court is vested with wide discretion in setting the amount of the bond, and the court may even require no bond."  *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quoting *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976)).  Polk requests that the Court require no bond (Dkt. Nos. 5-1, at 14; 9, at 14).  Here, the Commissioner has made no showing that damages will result from a wrongful issuance of an injunction (*see* Dkt. No. 12).  For these reasons, the Court declines to require Polk to give security in any amount.

### VIII.     Conclusion

For the foregoing reasons, the Court denies, as moot, the joint motion for order granting stipulated judgment and order (Dkt. No. 22).  The Court determines that Polk has met his initial

burden for the issuance of a preliminary injunction and grants Polk's motion, awarding the narrow relief Polk seeks at this stage (Dkt. No. 5).  The Court herby enjoins the Commissioner, and all those acting in concert with him, including his employees, agents, and successors in office, from enforcing the Employer Requirement under Arkansas Code Annotated § 23-103-402(11)(A) and 23 CAR § 204-104(2)(A) – (D) as to Polk and orders them to permit Polk to register and sit for the Arkansas title examination without requiring him to be employed by a resident licensee or employed by a resident title agency.  Furthermore, the Court orders that the Commissioner, and all those acting in concert with him, including his employees, agents, and successors in office, treat Polk's application the same as an applicant for a resident title license under Arkansas Code Annotated § 23-103-402(11)(A) and 23 CAR § 204-104(2)(A) – (D).  This Order remains in effect until further order of the Court.

It is so ordered this 12th day of December, 2025 at 4:51 PM.

_____
Kristine G. Baker
Chief United States District Judge